SHELLEY D. KROHN
E-mail: shelley@trusteekrohn.com
510 South 8th Street
Las Vegas, Nevada 89101
Telephone: (702) 421-2210
Facsimile: (702) 366-1939

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF NEVADA**

**\*\*\*\*\***

| | |
|---|---|
| In re: | ) CASE NO. BK-S-17-16306-BTB |
| | ) CHAPTER 7 |
| NEAL ALAN SCHNOG | ) |
| | ) |
| Debtor. | ) |
| ——————————————————— | ) |

**EX PARTE APPLICATION FOR AN ORDER PURSUANT TO §§327
and 328(a) AUTHORIZING THE EMPLOYMENT OF SPECIAL
COUNSEL FOR CHAPTER 7 TRUSTEE NUNC PRO TUNC**

Shelley D. Krohn (the "Trustee"), the appointed Chapter 7 Trustee in this matter, submits this Ex Parte Application for Order Approving Employment of Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, PA ("Levin Papantonio") and Johnson & Vines ("Johnson") as Special Counsel for Shelley D. Krohn, Chapter 7 Trustee Nunc Pro Tunc (the "Application") in the above-referenced matter.    This Application is made pursuant to 11 U.S.C. §§ 327 and 328 and Fed. R. Bankr. P. 2014.   The Trustee submits the declarations of Bill Cash, III, Esq. and Christopher D. Jennings, Esq. in support of this Application.

## I. BACKGROUND

1.    Debtor Neal Alan Schnog ("Debtor") filed a Chapter 7 voluntary petition for relief under Chapter 7 of the United States

Bankruptcy Code on November 24, 2017 [Dkt. No. 1].

2.    Shelley D. Krohn appointed Chapter 7 Trustee on November 24, 2017 [Dkt. No. 6].

3.    The Debtor received his Discharge on February 27, 2018 [Dkt. No. 39].

## II. JURISDICTION AND VENUE

4.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1134.  This is a core proceeding pursuant to 28 U.S.C. § 157(b) (2) (A).  The statutory basis for the relief sought is Section 327, 1104 and 1106 of the Bankruptcy Code and Fed. R. Bankr. P. 2014.  Venue of Debtor's Chapter 7 case in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## III. THE LAW FIRMS

5.    The Trustee desires to retain Levin Papantonio and Johnson on a contingent basis, to investigate and prosecute the Debtor's product liability/personal injury claim against a product manufacturer.

6.    The Trustee has selected these firms as they have experience in the area of personal injury and product liability claims. Additionally, the Debtor retained Levin Papantonio and BPBHC to commence the cause of action on May 14, 2017.  *See* retainer agreement attached hereto as Exhibit "A".

7.    To its best knowledge and belief, Levin Papantonio, its shareholders and associates have no connection with the United States

2

Trustee or any person employed in the Office of the United States Trustee.

8.   To its best knowledge and belief, Levin Papantonio does not represent the Debtor (except as disclosed in this Application), his creditors, or any other party in interest or their respective attorneys and/or accountants.

9.   To its best knowledge and belief, Levin Papantonio represents no interest that is adverse to the Trustee, or to the Debtor's estate, in matters upon which it will be engaged as special counsel as set forth in the Lowe Declaration.

10.   The Trustee submits that Levin Papantonio is a disinterested person within the meaning of 11 U.S.C. § 101(14) for purposes of 11 U.S.C. § 327(a), as it pertains to representing the Trustee as special counsel in the Debtor's Bankruptcy.

11.   To its best knowledge and belief, Johnson, its shareholders and associates have no connection with the United States Trustee or any person employed in the Office of the United States Trustee.

12.   To its best knowledge and belief, Johnson does not represent the Debtor (except as disclosed in this Application), his creditors, or any other party in interest or their respective attorneys and/or accountants.

13.   To its best knowledge and belief, Johnson represents no interest that is adverse to the Trustee, or to the Debtor's estate, in matters upon which it will be engaged as special counsel as set forth in the Lowe Declaration.

3

14.   The Trustee submits that Johnson is a disinterested person within the meaning of 11 U.S.C. § 101(14) for purposes of 11 U.S.C. § 327(a), as it pertains to representing the Trustee as special counsel in the Debtor's Bankruptcy.

### IV.   NUNC PRO TUNC EMPLOYMENT

15.   Normally, the Trustee would have employed special counsel at the inception of the case.    However, the Debtor had already retained Levin Papantonio and Johnson prior to commencing this bankruptcy matter.

> Nunc pro tunc employment is available in "exceptional circumstances." Atkins v. Wain (In re Atkins), 69 F.3d 970, 974 (9th Cir. 1995). To establish such circumstances, the applicant must (1) give a satisfactory explanation for the failure to obtain pre-employment approval; and (2) show that its services conferred a significant benefit on the bankruptcy estate. Id.; Law Offices of Ivan W. Halperin v. Occidental Fin. Group, Inc. (In re Occidental Fin. Group, Inc.), 40 F.3d 1059, 1062 (9th Cir.1994); Okamoto v. THC Fin. Corp. (In re THC Fin. Corp.), 837 F.2d 389, 392 (9th Cir.1988).   The bankruptcy court considering such an application may also, in its discretion, rely on other factors, such as those set forth in In re Twinton Props. P'ship, 27 B.R. 817, 819-20 (Bankr.M.D.Tenn.1983) (see infra at pp. 15-16). Atkins, 69 F.3d at 976. Of course, the applicant also must meet the criteria for employment under §327.    Id.; Mehdipour v. Marcus & Millichap (In re Mehdipour), 202 B.R. 474, 479 (9th Cir. BAP1996) cited by In re Watson, 2:12 BK 34557, 2015 WL 3939781, at *5 (B.A.P. 9th Cir. June 25, 2015).

16.   In the present case, the Debtor retained Levin Papantonio and Johnson for a cause of action that arose prior to his filing for Chapter 7 relief.    There was no opportunity for the Trustee to employ special counsel until now.    As such, Levin Papantonio and Johnson had already commenced work on the cause of action when the Trustee became a party to the action.

The Ninth Circuit has held that a bankruptcy court, in the exercise of its discretion in deciding whether to grant a nunc pro tunc employment application, may, but need not, consider additional factors, including those enumerated in In re Twinton Props. P'ship, 27 B.R. 817, 819-20 (Bankr.M.D.Tenn.1983). Atkins, 69 F.3d at 976. The Twinton Properties factors are:

1. The debtor, trustee or committee [to whom or to which the services were rendered] expressly contracted with the professional person to perform the services which were thereafter rendered;

2. The party for whom the work was performed approves the entry of the nunc pro tunc order;

3. The applicant has provided notice of the application to creditors and parties in interest and has provided an opportunity for filing objections;

4. No creditor or party in interest offers reasonable objection to the entry of the nunc pro tunc order;

5. The professional satisfied all the criteria for employment pursuant to 11 U.S.C. § 327 and [Rule 2014] of the Federal Rules of Bankruptcy Procedure at or before the time services were actually commenced and remained qualified during the period for which services were provided;

6. The work was performed properly, efficiently, and to a high standard of quality;

7. No actual or potential prejudice will inure to the estate or other parties in interest;

8. The applicant's failure to seek pre-employment approval is satisfactorily explained; and

9. The applicant exhibits no pattern of inattention or negligence in soliciting judicial approval for the employment of professionals. Cited by In re Watson, 2:12 BK 34557, 2015 WL 3939781, at *7 (B.A.P. 9th Cir. June 25, 2015)

17.   Levin Papantonio and Johnson, through this application, have provided all of the required disclosures and declarations to support their application for employment nunc pro tunc pursuant to §327.  It

5

is unlikely that had this application for employment been brought sooner, that any objections would have been filed.  The undersigned has no reason to believe that any objections will be made at the present time.  Further, there is no threat of any actual or potential prejudice to the estate or other interested parties.  The Trustee feels that Levin Papantonio and Johnson are best qualified to continue representing the Estate as evidenced by their experience in matters of this character and their employment, nunc pro tunc, back to November 24, 2017, should be approved.

## V.  COMPENSATION

18.  Subject to Court approval, in accordance with 11 U.S.C. §330, the Trustee seeks to retain the Levin Papantonio and Johnson on a contingent basis plus reimbursement of actual and necessary expenses incurred by the Firms in performing their duties.

19.  The *total* fee sought by Levin Papantonio and Johnson is a contingent fee as follows:

   A.  If recovery occurs before the defendants file an answer to the complaint or demand appointment of arbitrators, the attorneys fees will be 33 1/3% of any recovery up to $1 million; 30% of any portion of the recovery between $1 million and $2 million; and 20% of any potion of the recovery exceeding $2 million; OR

   B.  If recovery occurs after the defendants file an answer to the complaint or demand appointment of arbitrators, or after the time period for the action expires, the attorneys fees will be 40% of any recovery up to $1 million; 30% of any portion of the recovery between $1 million and $2 million; and 20% of any potion of the recovery exceeding $2 million; OR

   C.  If all defendants admit liability at the time of their answers and request a trial only on damages, the attorneys fees will be 33 1/3% of any recovery up to $1 million; 20% of any portion of the recovery between $1

6

million and $2 million; and 15% of any potion of the
recovery exceeding $2 million.

In addition to the above, an additional 5% of any gross
recovery will be charged as fees if an appellate proceeding is
filed or post-judgment relief or action is required for
recovery on the judgment ("Contingent Fee").

If a recovery is made, all expenses incurred shall be paid
from the recovery.

20.   This fee *sharing* is not a violation of 11 U.S.C. §504.
This same fee sharing situation was found not to be a violation of
§504 as the terms of engagement do not entitle either firm to receive
more than the Contingent Fee award.   Further, any Contingent Fee is
subject to this Court's approval and payment by the Trustee.   Finally,
neither law firm is seeking a recovery or payment from the other.
See In re AGE REFINING, INC., 447 B.R. 786 (W.D. Texas 2011).

**WHEREFORE**, the Trustee respectfully requests that she be
authorized to employ Levin, Papantonio, Thomas, Mitchell, Rafferty &
Proctor, PA and Johnson & Vines as Special Counsel for Shelley D.
Krohn, Chapter 7 Trustee Nunc Pro Tunc to the date of the initial
bankruptcy filing by the Debtor; i.e. November 24, 2017, and upon the
terms set forth in this application with payment of all fees and costs
subject to notice and hearing and approval of this Court and for such
other and further relief as is just and proper in the premises.

DATED this  15  day of June, 2018.

SHELLEY D. KROHN, TRUSTEE

7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

**EXHIBIT "A"**

25
26
27
28

## ATTORNEY-CLIENT EMPLOYMENT AGREEMENT in Mass Torts Cases

Clients **Neal Schnog** (referred to as "Clients", "you", "our" or "us") retain the law firm of Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A., a Florida professional corporation, Pensacola, Florida, (referred to as "Levin Papantonio" or "Law Firm") to provide legal services to us in our claim for damages arising out of Proton Pump Inhibitor (Nexium/Prilosec/Prevacid) usage.

### 1.    CONTINGENT FEE

For legal services performed, Clients agree to pay Law Firm fees and costs. The fees shall be paid as listed below out of the total amount recovered, whether by settlement or suit, which fee is determined on the total gross Client recovery before reduction of costs:

  (i)    If recovery occurs before the defendants file an answer to the complaint or demand appointment of arbitrators, the attorneys' fee will be: 33 1/3% of any recovery up to $1 million; 30% of any portion of the recovery between $1 million and $2 million; and 20% of any portion of the recovery exceeding $2 million.

OR

  (ii)   If recovery occurs after the defendants file an answer to the complaint or demand appointment of arbitrators, or after the time period for this action expires, the attorneys' fee will be: 40% of any recovery up to $1 million; 30% of any portion of the recovery between $1 million and $2 million; and 20% of any portion of the recovery exceeding $2 million.

OR

  (iii)  If all defendants admit liability at the time of filing their answers and request a trial only on damages, the attorneys' fee will be: 33 1/3% of any recovery up to $1 million; 20% of any portion of the recovery between $1 million and $2 million; and 15% of any portion of the recovery exceeding $2 million.

In addition to the fees noted above, an additional 5% of any gross recovery will be charged as fees if an appellate proceeding is filed or post-judgment relief or action is required for recovery on the judgment, and the proceeding or action is handled by Law Firm. If the proceeding or action is handled by outside counsel, then the fees and costs owe outside counsel will be subject to a separate agreement between outside counsel and Clients.

In the event a court awards attorneys' fees against the opposing side, the fees paid by the opposing side are included as part of the total amount recovered by Clients for purpose of calculating the contingency fee to be paid by Clients.

**This employment of Law Firm is on a contingent fee basis and unless a recovery is made there will be no obligation by Clients to pay attorneys' fees or costs.**

### 2.    COSTS

If a recovery is made, Clients are responsible to pay all expenses incurred by Law Firm in handling Clients' case, in addition to the attorneys' fees noted above, but in no event will Clients' responsibility for paying costs and fees exceed Clients' recovery.

Costs include but are not limited to: cash and non-cash expenditures for filing fees; subpoenas;

depositions; witness fees; in-house and outside investigation services; expert witness fees; state court and multi-district litigation assessments; medical records and reports; computer research; photographs; in-house and outside photocopies; facsimiles; long-distance calls; postage and overnight delivery charges; common benefit charges; mediation fees; travel costs; in-house and outside media services; outside professional fees and costs for resolving medical liens, estate, guardianship, and bankruptcy matters; Medicare set-aside report preparation; and similar expenses incurred in performing legal services for Clients.

All costs advanced on behalf of clients shall bear interest at the prime rate as published by the Wall Street Journal at the time the cost is incurred until such time as the costs are paid.

In the event Clients make a recovery on a claim after representation has been discontinued (whether by withdrawal or discharge), Clients are responsible to pay costs incurred by Law Firm during representation, but only if the Clients ultimately recover.

## 3.    ASSOCIATE COUNSEL

Clients approve the association of **Johnson & Vines** as associate counsel and agree that the attorneys' fees discussed above will include fees paid associate counsel, which fees will be divided between Levin Papantonio and associate counsel based upon the contributions, work performed, referral relationship, and value added by each firm. Clients will pay no more in fees with the hiring of associate counsel than if Levin Papantonio alone represented Clients; however, Clients agree to pay costs incurred by associate counsel on Clients' behalf in the same manner as paying Levin Papantonio's costs. Levin Papantonio and associate counsel each will be legally responsible to represent Clients' interests, and each will be available to Clients for consultation.  Associate counsel joining in the representation of Clients can do so by signing an addendum that is incorporated as part of this Agreement. The term "Law Firm" as used in this Agreement includes associate counsel.

## 4.    MEDICAL MALPRACTICE TIME LIMITATIONS

**Clients agree that Law Firm is not being retained to pursue any action against Clients' healthcare providers.** If Clients wish to sue their healthcare providers, Clients must retain other counsel. Clients understand they may have a claim against healthcare providers, and the defendants may attempt to blame Clients' healthcare providers for the damages. If a judge or jury determines the healthcare providers were partially at fault, then Client's recovery may be reduced by that portion of fault. Clients understand there are time limitations for how long an injured person has to sue healthcare providers (known as statutes of limitation), and if a lawsuit is not filed before the statute of limitations expires, then Clients will be prevented from ever suing the healthcare providers. Therefore, Clients should retain other counsel **immediately** if they want to sue their healthcare providers.

## 5.    ARBITRATION

Disputes that might arise out of the services performed or failed to be performed under this Agreement (including fees, costs, duty, negligence, or other forms of action), whether involving Levin Papantonio, associate counsel, or any of their attorneys or staff, shall be resolved solely by arbitration pursuant to the Florida Arbitration Code (Fla. Stat. Ch. 682). The arbitration will be conducted by a panel of three arbitrators and each arbitrator shall be an actively practicing attorney in the state of Florida. Clients will select one arbitrator and Levin Papantonio will select

one arbitrator, and the two arbitrators will select the third arbitrator. The powers and rulings of the arbitrators shall be determined by a majority of their number. As part of this arbitration agreement, Clients and Law Firms waive any right to bring or participate in a class action lawsuit or class action claim in arbitration.

**Florida law requires the following language as part of arbitration agreements. NOTICE: This Agreement contains provisions requiring arbitration of disputes. Before you sign this Agreement you should consider consulting with another lawyer about the advisability of making an agreement with mandatory arbitration requirements. Arbitration proceedings are ways to resolve disputes without use of the court system. By entering into agreements that require arbitration as the way to resolve disputes, you give up (waive) your right to go to court to resolve those disputes by a judge or jury. These are important rights that should not be given up without careful consideration.**

## 6.    RETENTION OF CLIENTS' FILE

Law Firm will retain Clients' file for six years after the case is completed. After six years, the entire file will be destroyed, and no portion will be available. Thus, it's Clients' responsibility to seek the return of any portion of the file desired immediately when the case is completed.

## 7.    LEGAL CONSTRUCTION

If any provision, or portion thereof, contained in this Agreement is held invalid, illegal or unenforceable, such will not affect the validity or enforceability of any other provision or portion, which shall be construed as if such invalid, illegal or unenforceable provision was not contained. Similarly, if any provision or portion of this Agreement does not comply with the laws or rules of a state determined to control this Agreement, then this Agreement shall be modified to comply with the laws and rules of the controlling state in a manner best capable of maintaining the intent of this Agreement. Each party may sign a separate counterpart of this Agreement. All such counterparts, taken together, shall constitute one and the same instrument.

## 8.    SEVEN DAY RIGHT TO CANCEL

Clients may cancel this Agreement by written notice to Law Firm within seven (7) days of the date this Agreement is signed, and if canceled Clients will not be required to pay any attorneys' fees.

## 9.    RECOVERY

Clients agree that Law Firm may endorse and deposit into Law Firm's Trust Account, for Clients' benefit, checks received in Clients' name.

## 10.    DEFINITIONS

**Common Benefit Charges** are expenses incurred by Law Firm for the benefit of a group of its clients. These charges are shared among the group whether a client retained Law Firm early or late in the litigation and whether the charges were incurred before or after the client retained Law Firm. For example, if an expert witness is hired in one client's case that can benefit a group of clients, this is a common benefit charge. Rather than have the first client pay this expert bill, Law Firm spreads the cost among all clients who will benefit from the expert. Common benefit

charges are determined at the time a client receives his/her recovery, and is calculated by dividing the outstanding common benefit charges by the number of clients being represented by Law Firm at the time of distribution. Common benefit charges may include but are not limited to postage, telephone, copies, faxes, experts, investigation, computer research, travel, depositions and many of the costs incurred in trying one client's case before a jury or arbitration panel where the outcome can benefit a group of clients.

**Settlement:** In mass torts cases like this one, the opposing side sometimes attempts to settle Law Firm's clients in groups. The settlement process can take many different forms. For example, Law Firm may obtain each client's authorization for a minimum amount for which each client authorizes Law Firm to attempt to settle the client's case. These minimum amounts differ for each client depending on the circumstances of each case. Law Firm adds up the total of all clients' minimum authorized demands and attempts to settle the group of clients for at least the minimum authorized by all clients. If a settlement is reached, then all clients will be informed of the total amount of the settlement in addition to the division of money among all clients. **No matter what settlement process is used, you the Client always have the right to accept or reject a settlement being offered.**

## 11.    CONFLICT OF STATE LAWS

Levin, Papantonio intends this contract to comply fully with the law of the State of Florida, but if any provision of this agreement, including the computation of fees and/or costs, does not comply with the law or ethics of the applicable state law in which the Client(s) reside or where suit is filed, then this contract shall be modified to comply with the applicable law.

## 12.    TIMELINESS CLAIMS

Client agrees that the Firm must have certain documentation before any lawsuit can be filed for the Client, including medical records establishing the injury and proof that Client used the defective product being investigated for the client. Client understands that if a lawsuit is not filed prior to the expiration of the statute of limitations, Client will lose the right to make a claim. **Client agrees that it will take the Firm a minimum of sixty (60) days after the receipt of such documentation to evaluate Client's case to determine whether to file any lawsuit, and in the event that any deadline expires prior to or during the evaluation period, Client agrees not to hold the Firm and or their associate counsel responsible for any consequence related to the expiration of that deadline.**

## 13.    WHEN LEGAL REPRESENTATION BEGINS & RECEIPT OF DOCUMENTS

**Clients agree that Levin Papantonio's representation, and that of associate counsel, begins only after Clients sign and return this Agreement, and Levin Papantonio and associate counsel have accepted the case and also signed this Agreement. Levin Papantonio and associate counsel will take no action on Clients' case until after representation begins.**

Attorney-Client Employment Agreement    Page 4 (rev. June 2015)

Clients acknowledge they have read the attached Client Statement of Rights before signing this Agreement, understand their rights, and have received a signed copy for their records.

**Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.**

By: _____

Date: 23rd day of May, 20 17

**Johnson & Vines**

By: _____

Date: 23rd day of May, 20 17

**Neal Schnog**

By: _____

Date: 10th day of May, 2017

## CLIENT STATEMENT OF RIGHTS

Before you, the prospective client, arrange a contingent fee agreement with a lawyer, you should understand this statement of your rights as a client. This statement is not a part of the actual contract between you and your lawyer, but, as a prospective client, you should be aware of these rights:

1.      There is no legal requirement that a lawyer charge a client a set fee or a percentage of money recovered in a case. You, the client, have the right to talk with your lawyer about the proposed fee and to bargain about the rate or percentage as in any other contract. If you do not reach an agreement with one lawyer you may talk with other lawyers.

2.      Any contingent fee contract must be in writing and you have three business days by law and seven business days under this contract to reconsider the contract. You may cancel the contract without any reason if you notify your lawyer in writing within seven business days of signing the contract. If you withdraw from the contract within the first seven business days, you do not owe the lawyer a fee although you may be responsible for the lawyer's actual costs during that time. If your lawyer begins to represent you, your lawyer may not withdraw from the case without giving you notice, delivering necessary papers to you, and allowing you time to employ another lawyer. Often, your lawyer must obtain court approval before withdrawing from a case. If you discharge your lawyer without good cause after the seven-day period, you may have to pay a fee for work the lawyer has done.

3.      Before hiring a lawyer, you, the client, have the right to know about the lawyer's education, training, and experience. If you ask, the lawyer should tell you specifically about the lawyer's actual experience dealing with cases similar to yours. If you ask, the lawyer should provide information about special training or knowledge and give you this information in writing if you request it.

4.      Before signing a contingent fee contract with you, a lawyer must advise you whether the lawyer intends to handle your case alone or whether other lawyers will be helping with the case. If your lawyer intends to refer the case to other lawyers, the lawyer should tell you what kind of fee sharing arrangement will be made with the other lawyers. If lawyers from different law firms will represent you, at least one lawyer from each law firm must sign the contingent fee contract.

5.      If your lawyer intends to refer your case to another lawyer or counsel with other lawyers, your lawyer should tell you about that at the beginning. If your lawyer takes the case and later decides to refer it to another lawyer or to associate with other lawyers, you should sign a new contract that includes the new lawyers. You, the client, also have the right to consult with each lawyer working on your case and each lawyer is legally responsible to represent your interests and is legally responsible for the acts of the other lawyers involved in the case.

6.      You, the client, have the right to know in advance how you will need to pay the expenses and the legal fees at the end of the case. If you pay a deposit in advance for costs, you may ask reasonable questions about how the money will be or has been spent and how much of it remains unspent. Your lawyer should give a reasonable estimate about future necessary costs. If your lawyer agrees to lend or advance you money to prepare or research the case, you have the right to know periodically how much money your lawyer has spent on your behalf. You also have the right to decide, after consulting with your lawyer, how much money is to be spent to prepare a case. If you pay the expenses, you have the right to decide how much to spend. Your

Attorney-Client Employment Agreement    Page 6 (rev. June 2015)

lawyer should also inform you whether the fee will be based on the gross amount recovered or on the amount recovered minus the costs.

7.      You, the client, have the right to be told by your lawyer about possible adverse consequences if you lose the case. Those adverse consequences might include money that you might have to pay to your lawyer for costs and liability you might have for attorney's fees, costs, and expenses to the other side.

8.      You, the client, have the right to receive and approve a closing statement at the end of the case before you pay any money. The statement must list all of the financial details of the entire case, including the amount recovered, all expenses, and a precise statement of your lawyer's fee. Until you approve the closing statement your lawyer cannot pay any money to anyone, including you, without an appropriate order of the court. You also have the right to have every lawyer or law firm working on your case sign this closing statement.

9.      You, the client, have the right to ask your lawyer at reasonable intervals how the case is progressing and to have these questions answered to the best of your lawyer's ability.

10.     You, the client, have the right to make the final decision regarding settlement of a case. Your lawyer must notify you of all offers of settlement before and after the trial. Offers during the trial must be immediately communicated and you should consult with your lawyer regarding whether to accept a settlement. However, you must make the final decision to accept or reject a settlement.

11.     If at any time you, the client, believe that your lawyer has charged an excessive or illegal fee, you have the right to report the matter to The Florida Bar, the agency that oversees the practice and behavior of all lawyers in Florida. For information on how to reach The Florida Bar, call 850-561-5600, or contact the local bar association. Any disagreement between you and your lawyer about a fee can be taken to court and you may wish to hire another lawyer to help you resolve this disagreement. Usually fee disputes must be handled in a separate lawsuit, unless your fee contract provides for arbitration. You can request, but may not require, that a provision for arbitration (under Chapter 682, Florida Statutes, or under the fee arbitration rule of the Rules Regulating The Florida Bar) be included in your fee contract.

Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.

By: _____

Date: 23rd day of May, 2017

Johnson & Vines

By: _____

Date: 23rd day of May, 2017

Neal Schnog

By: _____

By: _____

Date: 18th day of May, 2017

Attorney-Client Employment Agreement    Page 7 (rev. June 2015)